UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IAN MERRITT,<br><br>        Plaintiff,<br><br>v.<br><br>JONATHAN COGLEY,<br><br>        Defendant. | Case No.: 23cv1031-CAB-KSC<br><br>**ORDER DENYING MOTION FOR NEW TRIAL AND MODIFYING JUDGMENT**<br><br>[Doc. No. 151] |

After a six-day trial, the jury found Defendant Cogley liable to Plaintiff Ian Merritt for negligence, awarding him $5,810,000. [Doc. No. 143.] Defendant Cogley brought a timely motion seeking a new trial and/or remittitur. [Doc. No. 151.] For the reasons explained below, that motion is denied in part and granted in part.

**1. LEGAL STANDARD**

Pursuant to Fed. R. Civ. P. 59(a)(1)(A), a district court "may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A). A district court "may grant a new trial only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)

(quoting *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000)).

## 2. ANALYSIS

### A. The Jury's Damage Award

Defendant's first set of arguments relate to objections to the jury's damages award. The Court may grant a motion for new trial if a damages award is "grossly excessive or monstrous, clearly not supported by the evidence, or based only on speculation or guesswork." *Snyder v. Freight, Const., Local No. 287*, 175 F.3d 680, 689 (9th Cir. 1999). Remittitur is available to correct excessive verdicts. *Pershing Park Villas Homeowners Assoc. v. United Pac. Ins. Co.*, 219 F.3d 895, 905 (9th Cir. 2000). State law controls this Court's review of the compensatory damages award in a diversity action. *See Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 430–31 (1996).

    i.    Future Economic Damages

Defendant argues that the $1.5 million award for future economic damages is excessive because Plaintiff requested $550,000 for a questionable "spine stimulator" treatment. The case urged by Defendant, *Yaffee v. Skeen*, 106 Cal.App.5th 1281, 1310–1311 (2024), stands for the proposition that the speculative use of a spine stimulator to treat a plaintiff's injury could not serve as a basis for future economic damages. There is no bright-line rule that such a treatment cannot serve as the basis for future economic damages.

Plaintiff's expert, Dr. Andrew Fox, unequivocally testified that a spine stimulator was the appropriate treatment for Plaintiff based on his examination of the treatment record. [Tr. at 1097–98.] Dr. Fox did not walk away from this opinion on cross examination. The Court cannot characterize the jury's award based on any projected spine stimulator treatment as excessive, contradicted by the evidence, or speculative as to justify vacatur or reduction.

In addition to the cost of the stimulator treatment, Defendant claims that the future damages award is too high given Plaintiff's life expectancy of 32.3 years. The Court instructed the jury on Plaintiff's average life expectancy, but that the number was not

conclusive. [Inst. No. 30, Doc. No. 141 at 16.] Moreover, there no was evidence that the Plaintiff was susceptible to a less-than-average life expectancy. The award of $1.5 million cannot be described as so unsupportable or excessive as to second guess the jury's verdict.

      ii.      Past Economic Damages

Defendant asserts that the award of $710,000 in past economic damages is unsupported by the record. Defendant argues that (at most) the proper award amount should have been $549,026.18, an amount referred to in the testimony of Plaintiff's billing expert as "beyond a degree of billing certainty." [Tr. at 704:16–23.] Indeed, Plaintiff urged the same in closing argument. [Tr. at 1177:10–13.] The Court reduces the damages award to $549,026.18—the maximum amount supported by the evidence.[1] *See Oracle Corp. v. SAP AG*, 765 F.3d 1081, 1094 (9th Cir. 2014) ("A remittitur must reflect the maximum amount sustainable by the proof."). As Plaintiff concedes to remittitur, [Doc. No. 154 at 18.], a new trial is not required. *Watec Co. v. Liu*, 403 F.3d 645, 655 (9th Cir. 2005) (A "new trial is not required even where there is an excessive damages award resulting from passion and prejudice, unless there is also evidence that passion and prejudice affected the liability finding" (internal quotations omitted)).

      iii.      Non-Economic Damages

Non-economic damages, such as pain and suffering, need not be supported by so-called "objective" evidence. *See Passantino v. Johnson & Johnson Consumer Prod., Inc.*, 212 F.3d 493, 513 (9th Cir. 2000). The pain and suffering damages are justified by the record. Defendant admitted to hitting Plaintiff with his car and fleeing the scene. [Tr. at 445:1–8; 454:17–19; 472:18–23.] The evidence at trial included reports of Plaintiff's physical, mental, and emotional pain. [*See* Tr. at 577–87.] The evidence shows that a

---

[1] Plaintiff argues that Dr. Fox testified that this bill was improperly reduced since Plaintiff's billing expert, Dr. Andrew Morris, did not take into consideration some fees involved in Dr. Fox's treatment. The Court credits Dr. Morris's testimony for the appropriate amount because he was the designated billing expert.

finding of roughly $3.3 million for future non-economic damages (and $300,000 for past) is not so great as to justify a retrial or remittitur.

**B. The Court Properly Admitted the Body Camera Video**

Defendant argues that the jury's exposure to the audio contained on Officer Abernathy's body camera video warrants a new trial. At trial, Plaintiff played Officer Abernathy' video deposition. [*See* Tr. at 254:17–19.] The evidence established that Officer Abernathy recorded the body camera video in his capacity as a responding officer shortly after Defendant hit Plaintiff with his car. Defendant specifically targets the statements of an individual, a Mr. Mbemba, who did not testify at trial. Mr. Mbemba recorded the video of Defendant hitting Plaintiff with his car (which Defendant also challenges), which Officer Abernathy recorded on his body camera. The Court ruled that Mr. Mbemba's statements, as captured by Officer Abernathy, qualified as exceptions to hearsay since they were admissible as excited utterances and present sense impressions. [*See* Tr. at 162.]

On appeal, the Court's evidentiary rulings are reviewed for an abuse of discretion and will not be reversed absent some prejudice. *See Masson v. New Yorker Magazine, Inc.*, 85 F.3d 1394, 1399 (9th Cir. 1996). As the Court explained in overruling Defendant's in-trial objection, the statements made to the responding officer described a startling event that Mr. Mbemba had just observed. The trial evidence (based on testimony from Ms. Kira Merritt)[2] indicated approximately five minutes had passed between the hit-and-run and the arrival of the responding officer.[3] [Tr. at 233:6–7.] This timeframe did not render the statement non-contemporaneous. *See United States v. Rivera*, 43 F.3d 1291, 1296 (9th Cir.

---

[2] Ms. Merrit (no relation to Plaintiff) is present in Officer Abernathy's video. [Tr. at 226:23–24.] Ms. Merrit testified about her frantic and startled state after witnessing Defendant strike Plaintiff with his vehicle. [Tr. at 220:4–11.]

[3] Although Defendant claims that the Court never made any sort of finding about the relevant timeframe at issue prior to admitting the bodycam footage. Defendant never raised this issue in a pretrial motion. Nevertheless, the extensive pretrial argument surrounding the Mbemba video clearly previewed to the Court that police responded to the incident in an appropriate period. [Doc. No. 80; *see* Tr. at 24:1–5.]

1995) (finding that hearsay statements made at least 30 minutes after the startling event were admissible as excited utterances).

The Court sees no need to award a new trial based on this evidentiary ruling. There is obviously no Confrontation Clause issue based on Mr. Mbemba's absence. The statements from the bodycam footage relate to an event captured on a video (Mr. Mbemba's recording of the incident) that the jury saw repeatedly throughout trial. Although counsel continues to attack, among other things, the incident video's veracity, that video clearly shows Defendant hitting Plaintiff with his vehicle. Defendant admitted as such on the stand. Any prejudice from the statements captured on the bodycam video is negligible where the incident video itself showed the events reported to the responding officer.

### C. The Incident Video of Defendant Hitting Plaintiff was Properly Admitted

Defendant next argues that Plaintiff failed to authenticate the video showing Defendant hitting Plaintiff with his car. The trial testimony indicated otherwise. Both Plaintiff and Defendant could authenticate the video with their testimony about the event clearly shown on the video.[4] [*See* Tr. at 229, 446, 468.] The fact that the creator of the video, Mr. Mbemba, was unavailable for authentication purposes does not mean that the video could not been authenticated by percipient witnesses to the depicted events. *See* Fed. R. Evid. 901(1) (personal knowledge is sufficient to authenticate evidence).

### D. Plaintiff's Counsel Did Not Violate the Court's Motion in Limine

The Court granted Defendant's motion in limine to preclude references highlighting Plaintiff's wealth. Defendant complains that Plaintiff's counsel brought up, in various phases in the trial, that Plaintiff (1) runs a start-up incubator, (2) that he is a music producer, (3) that the day after the incident Plaintiff brought a Porsche and traded in his old Porsche, (4) that he wrote a check for the Porsche, and (5) that he attended a two-hour flying lesson.

---

[4] Ms. Merritt, a witness to the hit-and-run, testified that the video was "100 percent accurate" from her recollection. [Tr. at 229:14–17.] Although the Court allowed Plaintiff to play the video during opening statement, Ms. Merritt was the first witness through which Plaintiff introduced the video. [Tr. at 228.]

None of these issues violated the Court's prior ruling. As the Court explained, what Defendant did the day after the accident went to the truth or falsity of Defendant's case theory. [*See* Tr. at 491.] Defendant claimed that he hit Plaintiff in self-defense. He also claimed that his actions after the incident were motivated by a fear of being stalked by Plaintiff. The evidence of his post-accident actions showed that (1) Defendant efficiently attempted to cover up an event he believed to be his fault, and (2) he had no credible (and claimed) fear of Plaintiff hunting him down. Moreover, nothing about a startup or music production inherently speaks to Defendant's wealth. Defendant never raised those specific limitations in his motion in limine. [Doc. No. 80.] The Court instructed the jury that they should not consider Defendant's wealth. [Inst. No. 15, Doc. No. 141 at 16]; *see United States v. Scott*, 642 F.3d 791, 800 (9th Cir. 2011) (explaining that juries are presumed to follow instructions).

Plaintiff referenced the value of Defendant's car in closing argument. [Tr. at 1234–35.] Defendant never objected. *See Hemmings v. Tidyman's, Inc.*, 285 F.3d 1147, 1193 (9th Cir. 2002) ("The federal courts erect a 'high threshold' to claims of improper closing arguments in civil cases raised for the first time after trial.") Nevertheless, any prejudice from Plaintiff's reference to the cost of the vehicle was limited by the Court's instruction to the jury that they should not consider Defendant's wealth.

### E.   CONCLUSION

The Court denies Defendant's motion for new trial. The Court reduces the damages award for past economic damages from $710,000 to $549,026.18. The jury's other findings on damages remain undisturbed. To summarize:

- Past Economic Damages: $549,026.18
- Future Economic Damages: $1,500,000
- Past Non-Economic Damages: $300,000
- Future Non-Economic Damages: $3,300,000

///
///
///

1  The Court will issue an amended judgment reflecting the adjusted damage award.

3       It is **SO ORDERED**.

6  Dated: April 8, 2025

                                            _____
                                            Hon. Cathy Ann Bencivengo
                                            United States District Judge